UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Respondent, ) | |
| v. ) | No. 11-cr-10062-NMG |
| RUSSELL C. ROSE, ) | |
| Petitioner. ) | |

REPORT AND RECOMMENDATION ON
RUSSELL C. ROSE'S MOTION PURSUANT TO 28 U.S.C. § 2255
[Docket Nos. 1206, 1296, 1299]

August 13, 2020

BOAL, M.J.

Russell C. Rose, who is currently serving a twenty-five year sentence in a federal correctional facility, filed a pro se[1] motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (the "Motion"). Docket No. 1206.[2] For the following reasons, this Court recommends[3] that the District Judge assigned to this case deny the Motion.

---

[1] Judge Gorton recently appointed counsel for Rose for the limited purpose of determining Rose's eligibility for early release, and, if appropriate, compassionate release. Docket No. 1322.
[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.
[3] On January 22, 2020, Judge Gorton referred this matter to the undersigned for a report and recommendation. Docket No. 1316.

*Report and Recommendation accepted and adopted.*
*NMGorton, USDJ 9/9/20*

I. PROCEDURAL HISTORY

A. Trial

A grand jury indicted Rose and fifteen others for conspiring to distribute, and to possess with intent to distribute, cocaine and heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). Docket No. 76. The conspiracy, of which Rose and co-defendant Kelvin Frye were purportedly leaders, was alleged to have lasted from approximately March 2008 until November 2010. Id. at 2; see United States v. Rose, 802 F.3d 114, 116-17 (1st Cir. 2015). Following a 2012 jury trial, Rose was convicted on the drug-conspiracy charge. Docket No. 626.

B. Sentencing

Rose was sentenced on April 8, 2013. Docket No. 721. At the sentencing hearing, Rose's trial counsel, Rudolph F. Miller, reported to Judge Gorton that Rose recently had sent correspondence to the Massachusetts Board of Bar Overseers ("BBO") regarding a complaint Rose had filed against Miller. Sentencing Transcript ("Sentencing Tr.")[4] at 10. Miller noted that he was prepared to go forward with the sentencing, but relayed Rose's request that Judge Gorton remove Miller from the case. Id. Judge Gorton, treating this request as a motion to withdraw as counsel, denied Miller's motion.[5] Id. at 11.

At the sentencing, Judge Gorton determined by a preponderance of the evidence that Rose was responsible for at least nine kilograms of cocaine, twenty grams of heroin and 1.77 kilograms of marijuana. Id. at 39. Judge Gorton noted that this was "a very conservative estimate" and that the amount of cocaine very likely exceeded nine kilograms. Id. at 51. These

---

[4] Docket No. 946.
[5] On February 25, 2013, Miller filed a previous motion to withdraw. Docket No. 659. On March 15, 2013, Judge Gorton held a hearing at which Rose was present and spoke. Miller stated that Rose had filed a complaint with the BBO. Judge Gorton then denied the motion with respect to Miller. Docket No. 688.

2

quantities subjected Rose to a 20-year mandatory minimum sentence, although neither Judge Gorton nor the parties mentioned this during the sentencing hearing. See Rose, 802 F.3d at 126.

Under the sentencing guidelines, the drug amounts yielded a base offense level of 32. Sentencing Tr. 39. Judge Gorton then added a two-level enhancement for Rose's possession of a dangerous weapon, a four-level enhancement for Rose's role in the offense and an additional two-level enhancement for Rose's obstruction of justice with regard to his post-arrest activities. Id. Judge Gorton therefore determined that the total adjusted offense level was 40. Id.

With respect to criminal history, Judge Gorton determined that Rose fell under Criminal History Category III. Id. at 40. Rose's guideline range was therefore 360 months to life. Id. The government argued that a 360-month sentence was appropriate, given the scale of the drug operation and Rose's criminal history and conduct. Id. at 41-43. Miller asked for a lesser sentence, arguing that the guideline recommendation was excessive and, "in essence, a death sentence." Id. at 45.

Judge Gorton sentenced Rose to 300 months of imprisonment, to be followed by a supervised release term of 10 years. Id. at 53. He observed that Rose "organized and led one of the worst and most comprehensive drug conspiracies that this Court has seen in his 20 years on the bench." Id. at 51. Due to the extent of the conspiracy, Judge Gorton noted, Rose deserved to be imprisoned for "an unrelenting period of time, not only to punish [Rose] for the pain [he] inflicted on others but also to deter any other drug lord who thinks that he might get away with similar operations, which plague rich and poor communities alike." Id. However, in response to Miller's closing argument at sentencing, Judge Gorton ultimately imposed a sentence below the guideline range, emphasizing "a point of diminishing returns" with regard to sentence lengths.

Id. at 52. A 300-month sentence, therefore, was "sufficient, but not greater than necessary, to accomplish those things that [the Court] mentioned earlier in [its] remarks."[6] Id.

C. Appeal

Rose appealed his conviction. Docket No. 745. Among other things, Rose argued that Judge Gorton, rather than the jury, made certain drug-quantity findings, and that Judge Gorton then imposed a statutory mandated sentence based on those findings, in violation of Alleyne v. United States, 570 U.S. 99 (2013).[7] See Rose, 802 F.3d at 126. The United States Court of Appeals for the First Circuit found that no Alleyne error occurred, as Judge Gorton's sentence was "based purely on guidelines considerations." Id. at 127. Moreover, the First Circuit noted that, even if an Alleyne error did occur, the overwhelming drug evidence presented at trial precluded Rose from establishing the necessary prejudice to sustain his Alleyne claim. Id. at 127-28. The First Circuit affirmed Rose's conviction, id. at 128, and denied his petition for a rehearing en banc on January 12, 2016. The Supreme Court denied Rose's petition for a writ of certiorari on June 6, 2016. Docket No. 1143.

---

[6] Judge Gorton subsequently reduced Rose's sentence to 292 months pursuant to 18 U.S.C. § 3582. Docket No. 1165.
[7] In Alleyne, the Supreme Court held that:

> Any fact that, by law, increases the penalty for a crime is an "element" that must be submitted to the jury and found beyond a reasonable doubt. Mandatory minimum sentences increase the penalty for a crime. It follows then, that any fact that increases the mandatory minimum sentence is an "element" that must be submitted to the jury.

Alleyne, 570 U.S. at 103 (internal citation omitted).

4

D.   The Instant Motion

On June 7, 2017, Rose filed this Motion, in which he raises three ineffective assistance of counsel claims. Docket No. 1206. First, Rose argues that Miller rendered ineffective assistance of counsel when he did not object to jury instructions pertaining to drug weights attributable to Rose, or request a special question on the verdict specifying a drug weight attributable to Rose. Docket No. 1207 at 13. Second, Rose argues that Miller effectively abandoned him during his sentencing, constructively denying Rose his Sixth Amendment right to counsel. Id. Finally, Rose argues his appellate counsel rendered ineffective assistance of counsel by failing to notify the First Circuit that Judge Gorton imposed a mandatory minimum sentence. Id. Resolution of the Motion was stayed until the First Circuit decided Rose's direct appeal. Docket No. 1243. Thereafter, on March 6, 2019, Rose filed a supplemental memorandum of law. Docket No. 1279. The government filed its opposition on August 2, 2019. Docket No. 1298.

II.   LAW

A.   Standard Of Review

Title 28, United States Code, Section 2255 provides for post-conviction relief only when the petitioner has demonstrated that his sentence "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." Moreno-Morales v. United States, 334 F.3d 140, 148 (1st Cir. 2003) (citing David v. United States, 134 F.3d 470, 474 (1st Cir. 1998)). A sentence is subject to collateral attack if it involves an error or defect which, if uncorrected, would result in the complete miscarriage of justice or irregularities that are inconsistent with the rudimentary demands of fair procedure. Id.

The burden is on the petitioner to establish the need for Section 2255 relief. David, 134 F.3d at 474. The Supreme Court has emphasized that Section 2255 is not a substitute for direct appeal. Hill v. United States, 368 U.S. 424, 426-27 (1962); David, 134 F.3d at 474. "Errors warranting a reversal on direct appeal will not necessarily support a collateral attack." Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).

A document filed by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

B.  Ineffective Assistance Of Counsel

In order to show ineffective assistance of counsel under the Strickland analysis, Rose must show that: (1) counsel's performance was deficient, i.e., counsel made errors so serious that counsel was not functioning as "counsel" as guaranteed by the Sixth Amendment; and (2) the deficient performance prejudiced the defense, i.e., counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Although Rose must prove both deficient performance and prejudice to prevail on his ineffective assistance of counsel claim, the Court "need not address both requirements if the evidence as to either is lacking." Sleeper v. Spencer, 510 F.3d 32, 39 (1st Cir. 2007). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

1.  <u>Deficiency</u>

To satisfy the first prong of the Strickland test, Rose must show that trial counsel's performance was deficient to the point of being "objectively unreasonable." See <u>United States v. McGill</u>, 11 F.3d 223, 226 (1st Cir. 1993); <u>Companonio v. O'Brien</u>, 672 F.3d 101, 110 (1st Cir. 2012). Reasonable conduct falls "within the range of competence demanded of attorneys in criminal cases." <u>United States v. Bosch</u>, 584 F.2d 1113, 1121 (1st Cir. 1978) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 770-71 (1970)). In other words, performance is constitutionally deficient "only if no competent attorney would have acted as [counsel] did." <u>Companonio</u>, 672 F.3d at 110 (citation omitted). "As a general matter, failure to anticipate a new rule of law is not deficient performance." <u>U.S. v. Sampson</u>, 820 F. Supp. 2d 202, 223 (D. Mass. 2011) (citation omitted).

2.  <u>Prejudice</u>

To establish prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. "[T]he question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." <u>Harrington v. Richter</u>, 562 U.S. 86, 111 (2011). Rather, "the likelihood of different result must be substantial, not just conceivable." <u>Id.</u> at 112.

"In certain Sixth Amendment contexts, prejudice is presumed." <u>Strickland</u>, 466 U.S. at 692. The failure of defense counsel to "subject the prosecution's case to meaningful adversarial testing" constitutes a denial of a defendant's right to counsel and triggers a presumption of

7

prejudice. United States v. Cronic, 466 U.S. 648, 659 (1984). In these circumstances, a violation of the Sixth Amendment is presumed "without inquiry into counsel's actual performance." Id. at 662; see also Fusi v. O'Brien, 621 F.3d 1, 6 (1st Cir. 2010) ("Strickland requires a case-by-case analysis of whether counsel's deficiencies affected the outcome of a trial, while Cronic permits a presumption of prejudice if an actual or constructive denial of counsel occurs during a critical stage of the trial.").

The Cronic presumption is "the exception, not the rule." Scarpa v. Dubois, 38 F.3d 1, 12 (1st Cir. 1994). It applies only when defense counsel's conduct is so egregious that it is antithetical to the most basic ideas of effective advocacy. Id. For the Cronic presumption to apply, an attorney's failure to oppose the prosecution must be "complete." Bell v. Quintero, 125 S. Ct. 2240, 2241 (2005) (Thomas, J., dissenting). Where an attorney actively represents the defendant throughout the proceeding and his failure is limited to "specific points," there has not been "a complete failure of meaningful adversarial testing," and the presumption does not apply. Id. at 2242. Rather, the attorney's performance is analyzed under Strickland, focusing on those "specific points." Id. at 2242-43.

III. DISCUSSION

    A. Rose's Ineffective Assistance Claims

        1. Ineffective Assistance Of Trial Counsel

Rose argues that Miller rendered ineffective assistance by failing to (1) object to certain jury instructions pertaining to a reasonably foreseeable drug weight attributable to Rose, or (2) request a special question on the verdict specifying a drug weight attributable to Rose. Docket No. 1207 at 15-16. Miller's failure to anticipate the result in Alleyne and object on that basis, Rose contends, resulted in an aggravated sentence for a higher drug weight than was reasonably

8

foreseeable to Rose. Id. at 16. Moreover, Rose argues that he was subject to a higher standard of review on appeal due to Miller's failure to object. Id. at 17.

Here, Miller's failure to anticipate the change of law in Alleyne is plainly not deficient performance for Sixth Amendment purposes.[8] See Sampson, 820 F. Supp. 2d at 223-24. Moreover, the First Circuit found that Rose's sentencing did not implicate Alleyne. Rose, 802 F.3d at 127. Because Rose has failed to show either deficiency or prejudice, Rose did not receive ineffective assistance of counsel at the trial level.

### 2. Effective Abandonment

Rose contends that Miller's acts and omissions during and prior to Rose's sentencing hearing constituted effective abandonment, constructively denying Rose his Sixth Amendment right to counsel. Docket No. 1207 at 13. Rose argues that he is entitled to the Cronic presumption. However, he has failed to demonstrate that Miller completely failed to subject the prosecution to adversarial testing such that his performance was "tantamount to non-representation." United States v. Theodore, 468 F.3d 52, 57 (1st Cir. 2006).

Miller actively and effectively represented Rose throughout the sentencing hearing. For example, Miller made every objection Rose directed him to make in his sentencing memorandum (which renewed the 35 objections he made to the pre-sentencing report). Sentencing Tr. at 10-11; Docket No. 717-1. Miller presented arguments in support of these objections throughout the sentencing hearing. See e.g., Sentencing Tr. at 10-11, 16-19, 24-25, 27-30. He read a statement from Rose at the hearing. Sentencing Tr. at 47. Judge Gorton praised Miller's arguments as eloquent and effective, and cited his reasoning when imposing a sentence below the applicable guidelines. Sentencing Tr. at 52. Miller's conduct, therefore, did not constitute a "complete"

---

[8] Rose's sentencing hearing was held on April 8, 2013. Alleyne was decided on June 17, 2013.

9

failure to subject the prosecution's case to adversarial testing. Accordingly, Rose did not experience a constructive denial of counsel and the Cronic presumption of prejudice is inapplicable.

Rose also claims that his filing of a complaint with the BBO against Miller created a prejudicial conflict of interest.[9] Docket No. 1207 at 19. A conflict of interest represents a circumstance sufficient to trigger a presumption of prejudice, but only to the extent defense counsel "actively represented conflicting interests" and the conflict "adversely affected [the] lawyer's performance." Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)). To demonstrate a conflict of interest, a defendant must show the following elements: (1) defense counsel had the opportunity to pursue another plausible defense strategy, and (2) defense counsel did not pursue this strategy because of conflicting interests, or that the strategy was inherently in conflict with these interests. Bucuvalas v. United States, 98 F.3d 652, 656 (1st Cir. 1996). "When an alleged conflict of interest is at issue, actual prejudice need not be established." Id. A "mere theoretical division of loyalties" is insufficient to demonstrate a conflict of interest. Mickens v. Taylor, 535 U.S. 162, 171 (2002).

As mentioned above, Miller presented an effective defense at Rose's sentencing hearing. While Miller did notify Judge Gorton twice that Rose had lodged a complaint with the BBO against him, there is no indication that this complaint had an adverse effect on Miller's performance. Sentencing Tr. at 10; Docket No. 1277 at 10-11; 15. In addition, Rose has not presented a plausible alternative defense strategy nor has he provided evidence that Miller did

---

[9] Per Attorney Miller's affidavit, the BBO summarily dismissed Rose's complaint after an investigation. Docket No. 1294.

10

not pursue such a strategy due to the BBO complaint. Accordingly, Rose has not demonstrated that the complaint sufficiently hindered Miller's performance to grant Section 2255 relief.

### 3. Ineffective Assistance Of Appellate Counsel

Finally, Rose argues that his appellate counsel rendered ineffective assistance of counsel by failing to notify the First Circuit that the district court imposed a mandatory minimum sentence. Docket No. 1207 at 13. But for this error, according to Rose, the First Circuit "would have known [Rose] was sentenced under the aggravated statutory provision and would have found for [him] upon appeal." Id. at 21.

Rose's argument is not supported by the facts or the law. Rose's appellate brief contained a substantive section dedicated to his Alleyne-based arguments. Brief for Appellant at 49-55, United States v. Rose, 802 F.3d 114 (1st Cir. 2015) (No.13-1525). The government's brief stated that the district court violated Alleyne by concluding that Rose was subject to a mandatory minimum sentence based on judge-found drug quantities. Brief for Appellee at 75, United States v. Rose, 802 F.3d 114 (1st Cir. 2015) (No.13-1525). Moreover, the First Circuit explicitly addressed Rose's Alleyne argument in its opinion. Rose, 802 F.3d at 127. After recognizing the government's "apparent concession," the First Circuit nonetheless found that Rose's case did not implicate Alleyne. Id. Even if Rose did have a valid Alleyne argument, the First Circuit found that the "overwhelming evidence" that the government presented would have precluded Rose from establishing the necessary prejudice to sustain this claim. Id. at 127-28.

Furthermore, any strategic decisions made by Rose's appellate counsel are generally afforded deference unless they fall outside the professional norms of effective legal assistance. See Castillo v. Matesanz, 348 F.3d 1, 13 (1st Cir. 2003); Smith v. Robbins, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every

11

nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."). Accordingly, Rose has not demonstrated ineffective assistance of counsel at the appellate level.

B. No Hearing Is Needed

In connection with the Motion, Rose has moved for an evidentiary hearing, Docket No. 1296, and for a stay in order to allow him to file a reply brief after any such hearing. Docket No. 1299.

A prisoner who invokes Section 2255 is not entitled to an evidentiary hearing as a matter of right. David, 134 F.3d at 477 (citing United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).

> No hearing is required "when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case. In other words, a § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible."

Nolan v. United States, 870 F. Supp. 2d 254, 266 (D. Mass. 2012) (quoting McGill, 11 F.3d at 225-26); see also DeCologero v. United States, 802 F.3d 155, 167 (1st Cir. 2015). The burden to establish the need for an evidentiary hearing is on the movant. McGill, 11 F.3d at 225.

Rose has not met his burden. The Motion fails to enumerate claims that would entitle him to relief, as his claims are contradicted by the evidence of record in this case. This Court therefore recommends that Judge Gorton deny Rose's motion for an evidentiary hearing, Docket No. 1296, and deny as moot his motion for a stay until after such hearing.[10] Docket No. 1299.

---

[10] The filing of any reply brief typically requires leave of court. L.R. 7.1. Even without an evidentiary hearing, this Court finds that a reply brief is unnecessary in this case. Rose has adequately addressed the issues presented by the Motion.

12

IV.     RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case deny Rose's Motion.

V.      REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. See Rule 3, Rules for U.S. Magistrate Judges in the U.S. District Court for the District of Massachusetts. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; Fed. R. Crim. P. 59(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) or Fed. R. Crim. P. 59(b) will preclude further appellate review of the District Court's order based on this Report.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge